**AULAVA SAUNI, Claimant,**

**v.**

**MEMBERS OF THE PELEAFEI FAMILY, SALANOA SEFO,
CHRISTINA TAAGA, MOEFU SIFOA and
MEMBERS OF THE SALANOA FAMILY, Objectors.**

High Court of American Samoa
Land and Titles Division

LT No. 33-02

August 20, 2004

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge, and
TAPOPO, Associate Judge.

Counsel: For Aulava, Arthur Ripley, Jr.,
 For Peleafei Family, Tauivi Tuinei
 For Salanoa Family, Marie A. Lafaele

OPINION AND ORDER

On December 17, 2001, Aulava Sauni, *saʿo* (senior *matai*) of the Aulava family of Lauliʿi, applied to the Territorial Registrar's office on behalf of the Aulava family to record title in 4.4 acres of land situated in that area of the village commonly referred to as Lauliʿituai. The land is known variously as "Moli" or "Moli Samoa," apparently named because of its

unique capacity to sustain the growth of native oranges, or *moli Samoa*. The Salanoa and Peleafei families, also of Lauli`i, filed separate objections/counterclaims in dispute of Aulava's application. Following the parties' unsuccessful attempts at A.S.C.A. § 43.0302 mediation, the Secretary of Samoan Affairs certified an irreconcilable dispute for referral to this court.

The Peleafei family contends that Aulava's survey overlaps onto a small area of its land, known as "Ululoloa," situated westward of Aulava's claim. The Salanoa family claim, however, relates to alleged communal land of the Salanoa family, pertaining to the heirs of a particular Salanoa titleholder, namely, Salanoa Sa. While the Salanoa family originally claimed all of the area survey by Aulava as their communal land, *see* Salanoa's Answer and Statement of Case at ¶ 13, their position at trial was changed to exclude Peleafei's claimed overlap.

## Discussion

### I. Aulava v. Salanoa

With respect to the dispute between the Aulava and Salanoa families, the evidence is largely in agreement that the land was, within living memory, worked principally by the late Fitiaumua Toelei`u ("Toelei`u") and also by another named Taliva`a, who was brought onto the land by Toelei`u. The parties were also in agreement that Taliva`a had cultivated the area extensively before he removed off-island. Where the evidence diverged, however, was on the issue as to whether Toelei`u worked the disputed land on behalf of the Salanoa family or on behalf of the Aulava family.

The Aulavas assert that Toelei`u worked the disputed land on behalf of their family. Aulava himself testified that Toelei`i was a member of the Aulava family who served the Aulava titleholders and that he worked the land under the *pule* (traditional authority) of the *sa`o* of the Aulava family. By way of corroboration, Aulava pointed to the fact that Toelei`u had maintained his primary residence on another area of the Aulava family land known as "Falemalama," located within the village proper. Moreover, Toelei`u's remains were interred at the Aulava family's cemetery located within property known as "Fa`ataualofa." Lastly, the *matai* title Fitiaumua, which Toelei`u held, is claimed by Aulava as a lesser title of the Aulava family.

Aulava who was born and raised in the Village of Lauli`i, also testified that he is very familiar with the disputed land and that he had personally shown the surveyors its boundaries during his family's survey. Although, acknowledging that the disputed land was principally worked by Toelei`u and others brought onto the land by Toelei`u, including Taliva`a, Aulava testified that his father also grew taro on a part of the

land along side Taliva`a. Lastly, Aulava also testified that two of Taliva`a's sons are also buried in the Aulava family cemetery.

The Salanoa family disputes the Aulava family's claim. Witnesses for the Salanoa family claim that Toelei`u had worked and occupied the disputed land, known to them as "Fagaiafu" or "Faga," as a member of the Salanoa family. Moreover, they contrarily maintain that the *matai* title Fitiaumua is a lesser *matai* of the Salanoa family and not of the Aulava family. In support of their claim, witness To`oto`o Aleki ("To`oto`o"), who holds himself out as a lesser *matai* of the Salanoa family, testified that the Salanoa family has already re-appointed another Fitiaumua titleholder, Eseta, and that he, To`oto`o, was personally involved with presenting their new Fitiaumua titleholder to the village council in accordance with custom.

While not disputing that Toelei`u had actually resided on Aulava family land, the Salanoa family however asserts that this fact is not dispositive because, according to what To`oto`o claims to have learned about family history, Toelei`u is related to both the Aulava and Salanoa families. His thesis, therefore, is that while Toelei`u resided on Aulava family land "Falemalama," as an Aulava family member, he worked and cultivated the disputed area as a member of the Salanoa family. To this end, To`oto`o presented his understanding of Toelei`u's *gafa* (genealogy) to show an Aulava family connection among Toelei`u's forbears through his mother, a lady named Sitau who is said to be the daughter of Aulava Faometi.

To further bolster their position, Moefu Sifoa ("Sifoa"), who also holds himself out as a lesser *matai* of the Salanoa family, testified that he lives on the disputed land through his relationship to the Salanoa family. Moreover, he claims to be a member of the Aulava family through Sitau, his father's mother. He also testified that a number of other structures on the disputed land belong to members of his wife's family who all hail from Savai`i, Samoa.

In rebuttal, plaintiffs offered the testimony of Tofiga Aulava Tufele ("Tofiga"), a daughter of the late Aulava Mua`au, who testified that she was also born and raised in Lauli`i. She disclaimed the Aulava family connection advocated by the To`oto`o and Sifoa. According to Tofiga, her understanding of Toelei`u was that he was not a blood relative of the Aulava family but was instead adopted into the family; that he was given the Fitiaumua title of the Aulava family; and that he worked the disputed land under the auspices of Aulava titleholders. Tofiga testified that although Toelei`u did not have any children of his own living with him in their family, as he became aged, his brother Moefu, Sifoa's father, came to Lauli`i with his children to care for the old man; and that Moefu's children and others have since remained on the disputed land after the

passing of both Toelei`u and Moefu. According to Tofiga's understanding of her family's history of the disputed area, "Molisa" was initially cultivated by her grandfather Aulava Mata.

Lastly, Aulava also denied a family blood connection with Toelei`u. The Aulava family *gafa* as entrusted to him shows the old lady Sitau to be the off-spring of Tela of Afono and Tauvale the daughter of Tagoilelagi of Vatia. Tauvale's marriage to Tela followed her prior marriage to Aulava Titi, after the latter passed away. Tauvale's issue with Aulava Titi were Lelepa, who held the title Aulava, and Salogo. He also testified that Sitau, while the half sister of Aulava Lelepa and Salogo, was not blood connected to the Aulava title.

With diametrically opposing claims, this court as fact finder is primarily concerned with issues of credibility. Having had the opportunity to observe the parties' respective witnesses and to assess their demeanor as well as examine the respective proofs presented, the court finds the weight of the evidence to tilt in favor of the Aulava family. First, we find the testimony of High Talking Chief Aulava, a ranking orator in the village and county, together with the testimony of Tofiga Tufele, the daughter of Aulava Mua`au, to be more believable in matters of the Aulava family's genealogy and history. These two witnesses were born and raised in the village, enjoying the benefit and the experience of growing up with and learning from village elders, whereas To`oto`o and Sifoa are relative newcomers. To`oto`o testified that he first arrived in Lauli`i around 1974, having spent all his earlier life in (Western) Samoa. Likewise, Sifoa and his family originally hailed from Aua. Whereas, Aulava and Tofiga were thus testifying partly from family history and partly from the experience of being raised and growing up in Lauli`i with the past generation, To`oto`o and Sifoa were necessarily relying more on family history and after the fact research. Thus, we find that the Aulava family version of Toelei`u's personal family background is the more credible.

Also it is undisputed that Toelei`u maintained his personal residence on Aulava family land, and was eventually buried in the Aulava family cemetery. These facts lend compelling weight to the Aulava family's claim. Further, the added fact that Taliva`a's children were buried in the Aulava family cemetery also suggests that Taliva`a was on the disputed land under the auspices of the Aulava family. These are concrete indices in corroboration of the Aulava family's version of events.

We also find that Aulava's claim to the Fitiaumua title being a lesser *matai* title of his family, remaining vacant to this day, resonates better with reality. Aulava is not only a ranking orator within the village but possesses island-wide traditional recognition. His status as a traditional leader carries a certain measure of belief, especially with regard to

203

matters of his family's history and the composition of his family's structure. By contrast, the Salanoa witnesses' credibility leaves much to be desired. The Salanoa's effort to install the Fitiaumua title in one Eseta, as testified to by To`oto`o, was not in compliance with applicable law. The Lauli`i *matai* registry maintained by the Territorial Registrar indicates that the Fitiaumua *matai* title is a registered title. *See* Exhibit "2." Our review of this registry reveals that the last registered holder of the Fitiaumua *matai* title was Toelei`u, with the entry date in the registry being November 29, 1948. At the same time, our review failed to find any entry in the *matai* registry certifying "Eseta" as the current Fitiaumua titleholder from Lauli`i. With the admitted death of Toelei`u, the registry confirms Aulava's position that the Fitiaumua title is indeed vacant.

 The *Matai* Title Act, A.S.C.A. §§ 1.0401 et seq., the "Act," provides, *inter alia*, that "[a]ny *matai* title bestowed on a person contrary [to the provision of the Act] may not in any way be recognized." *See* § 1.0413. Additionally, § 1.0414 provides that "[a] person who uses any *matai* title . . . before the same has been registered in accordance with the provisions of [the Act] . . . shall be sentenced as for a class b misdemeanor." Therefore, the Salanoa family's attempt to invest the Fitiaumua title in one Eseta would appear to have been undertaken to avoid the publicity requirements of the Act and therefore thwart the Aulava family's opportunity to meaningfully object, as afforded by A.S.C.A. § 1.0407. As such, the Salanoa family's *matai* investiture effort was an exercise that smacks of nothing more than family posturing in contemplation of litigation over the disputed land. In any event, the effort was an empty gesture in violation of law, and To`oto`o's claim to personal involvement with presenting Eseta to the village council, an action Aulava disclaims any knowledge of, was an outright admission of criminal activity, punishable by up to six months in prison. *See* A.S.C.A. § 46.1907(2)(B). Finally, both To`oto`o and Sifoa's credence on the issue of the Fitiaumua's family status, was, in our view, affected by their joint charade in holding themselves out as Salanoa family *matai*, whereas in fact they are not *matai*. *See* Exhibit 6.[1] We conclude in favor of the Aulava family.

## II. Aulava v. Peleafei

The extent of the Peleafei's claim is said to be a small triangular piece at the westernmost tip of Aulava's survey, as roughly drawn freehand by one its witnesses on another party's exhibit. This side's counter-claim

---

[1] We found no entries in the *matai* registry evidencing *matai* titles "To`oto`o" and "Moefu" attached to the village of Lauli`i. The asserted use of non-existent *matai* titles by these witnesses is also a criminal act under A.S.C.A. § 1.0414. *Toilolo v. Poti*, 23 A.S.R.2d 130, 132 n.3 (Land & Titles Div. 1993).

remains as yet to be defined in metes and bounds, even though they have had more than ample time, in anticipation of litigation, to do so.[2] The basis of the Peleafei family's initial objection to Aulava's survey was that Aulava's claim overlapped onto Peleafei communal land "Ululoloa," previously awarded them by the court in "LT 42-83, *Vaimaona Foloi and Family v. Peleafei Tavesi & Family*, App. 09-85" . . . with title registered with the Territorial Registrar in Volume II, Native Land Titles, Page 314. *See* Statement of Claim by Members of Peleafei Family at ¶¶ 4-5. At trial, however, it became quite apparent that Aulava's survey extended nowhere near Peleafei's previously registered survey, and the counter-claim necessarily became enlarged eastward to an intervening portion of unsurveyed land, and extending onward onto a small portion of Aulava's claim.

 As between Aulava and Peleafei, we find in favor of Aulava's claim. Peleafei's claim, as noted above, is not defined in metes and bounds. Accordingly, their witnesses' claims to use and occupation in the vicinity were necessarily non-specific and, as far as we can judge, appurtenant to any part of the land area encompassing their registered survey as well as the adjacent unsurveyed area. Their lackadaisical preparation for litigation, resulting in the presentation of an undefined and non-specific claim to land, necessarily prevents us from making an informed decision not only as to the extent of its claim, but the basis of its claim premised on use and occupation. In any event, A.S.C.A. § 37.0101(b), proscribes against their being awarded title to undefined real property.

By contrast, we are satisfied that the Aulava family has presented credible evidence of use and occupation of their defined area of claim. They shall, therefore, prevail against the Peleafei family.

### Conclusion and Order

On the foregoing, we conclude that land area offered by registration by the Aulava family, being 4.401 acres more or less, and more particularly described in metes and bounds in Exhibit "4," is communal property of the Aulava family and shall be registered accordingly by the Territorial Registrar.

It is so ordered.

---

[2] *Cf.* A.S.C.A. § 37.0101(b) ("No title to land shall be registered . . . unless the description clearly identifies the boundaries of the land by metes and bounds.").